UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDGE INVESTMENT, LLC,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA *et al.*,

    *Defendants*.

Civil Action No. 17-621 (TJK)

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Plaintiff Edge Investment, LLC ("Edge"), a building construction company, and Defendants, various District of Columbia entities and their contractors. Defendants razed a building constructed by Edge, claiming that the building had damaged an underground sewer. A lawsuit addressing the same dispute and many of the same claims as this case is well into discovery in the Superior Court of the District of Columbia (the "Superior Court"). Before the Court are Defendant District of Columbia Water and Sewer Authority's ("D.C. Water") and Defendant George S. Hawkins' Motions to Stay or Dismiss. For the reasons described below, the Court will grant these motions in part and stay the case pursuant to the *Colorado River* doctrine.

## I. Background

### A. Factual Background

For purposes of these motions, the Court assumes the truth of the facts set forth in Edge's complaint. The Northeast Boundary Tunnel Sewer (the "NEBTS") is an underground waste and storm sewer. ECF No. 1 ("Compl.") ¶¶ 15, 28. D.C. Water is authorized to operate the NEBTS on behalf of the District of Columbia (the "District"). *Id.* ¶¶ 15-16.

On April 10, 2013, the D.C. Department of Consumer and Regulatory Affairs ("DCRA") issued a building permit authorizing construction of a three-story residential building on a lot (the "Lot") located near the H Street corridor. *Id.* ¶¶ 3, 24. The NEBTS runs approximately thirteen feet below the Lot. *Id.* ¶ 18. In May 2013, Edge purchased both the Lot and the approved building permit. *Id.* ¶ 39. Prior to doing so, Edge obtained a title report, which did not identify any easement granting authority to access or operate an underground sewer tunnel on the Lot. *Id.* ¶ 38.

On May 22, 2013, one of Edge's construction managers placed a call, as required by the Underground Facilities Protection Act ("UFPA"), D.C. Code § 34-2701 *et seq.*, to the District of Columbia's "one-call center" to provide notice about upcoming excavation on the Lot and request information about any conflicts. *Id.* ¶¶ 46, 49. A contractor for D.C. Water, Pinpoint Underground, LLC ("Pinpoint"), subsequently provided a "Clear/No Conflict" response to Edge's request. *Id.* ¶¶ 52-54, 56-58. Having been given the green light, Edge began construction on the new building (the "Building"). *Id.* ¶ 67.

In November 2013, a third party submitted paperwork to D.C. Water to obtain approval for water and sewer service at the Building on the Lot. *Id.* ¶ 72. On December 2, 2013, a D.C. Water employee responded via email that construction over the NEBTS would be very costly. *Id.* ¶ 73. That was when Edge first learned that the NEBTS ran under the Lot. *Id.*

In light of this development, the parties hired experts to assess what harm, if any, the Building might cause to the NEBTS. Edge submitted engineering reports to D.C. Water in December 2013 and March 2014, which concluded that the Building did not present any danger to the NEBTS. *Id.* ¶ 98. And D.C. Water had inspectors visit the site on July 31, 2014, who reported no damage to the NEBTS under the Lot. *Id.* ¶ 103. But D.C. Water claims that later

inspections revealed a crack in the NEBTS, and that an engineering firm it hired concluded that demolition of the Building was one way to protect the NEBTS. *Id.* ¶¶ 108-109.

Edge alleges that, on or around December 2014, D.C. Water, DCRA, and others formed a conspiracy to quickly raze the Building without providing Edge adequate due process. *Id.* ¶ 111. On January 8, 2015, DCRA issued a Notice to Revoke the permits for the Building. *Id.* ¶ 118. Next, DCRA issued a Notice of Intent to Raze a Residential Structure on January 22 (which was later withdrawn), *id.* ¶¶ 122-133; another on January 29 (also later withdrawn), *id.* ¶¶ 126, 151; and, finally, another on April 22, 2015, *id.* ¶ 152. The Building was razed on May 18, 2015, by Celtic Demolition, Inc. ("Celtic"), a contractor for D.C. Water. *Id.* ¶ 156. Edge alleges that D.C. Water lacked the authority to raze the Building and that it did not receive adequate due process before the Building was razed. *See id.* ¶¶ 158-160, 166-174.

In September 2015, after the Building had been razed, DCRA placed two liens totaling approximately $3.65 million on the Lot, which represented the costs of demolishing the Building and repairing the NEBTS. *Id.* ¶¶ 204-213.

**B.     Procedural Background**

**1.     Superior Court Proceedings**

On January 8, 2016, D.C. Water brought suit in Superior Court (the "Superior Court Action") seeking damages for harm caused to the NEBTS. *See* D.C. Sup. Ct. Case No. 2016 CA 000187 B ("Sup. Ct. Dkt."). In its complaint, D.C. Water asserted negligence claims against nine defendants, including Edge and the District of Columbia. Compl. ¶ 216. Several defendants moved to dismiss in February and March 2016; those motions were denied, and D.C. Water filed an amended complaint with leave of the court on April 18, 2016. *See* ECF No. 23 at 6; Sup. Ct. Dkt. Again, several defendants moved to dismiss the amended complaint, and Edge filed both a partial motion to dismiss and a motion for partial summary judgment. Sup. Ct. Dkt.

3

In June 2016, Edge's motion for partial summary judgment was denied, and discovery proceeded. *Id.* In September 2016, the Superior Court granted the District's motion to dismiss, but all other motions to dismiss were denied, at least in part. *Id.* In December 2016, the District of Columbia removed the Superior Court Action to federal court. *See D.C. Water & Sewer Auth. v. First Hand Land, LLC et al.*, No. 1:16-cv-02456-ABJ (D.D.C.) ("Removed Case Dkt."). After D.C. Water filed a motion to remand, the District of Columbia notified the court it did not oppose remand, and the court remanded the case to Superior Court in March 2017. Removed Case Dkt., ECF No. 32.

Multiple parties have filed counterclaims and third-party complaints in the Superior Court Action. On October 24, 2016, Edge filed counterclaims against D.C. Water. *Id.* On February 1, 2017, Edge filed amended counterclaims, alleging violations of substantive due process and procedural due process, conspiracy to violate Edge's due process rights, an unconstitutional taking, trespass, negligence under the UFPA, and inverse condemnation under the Fifth Amendment to the U.S. Constitution. *See* Removed Case Dkt., ECF No. 22. Also, on November 7, 2016, Edge filed a third-party complaint against the District, asserting many of the same claims. *See* Removed Case Dkt., ECF No. 11 at 162-78. Edge filed an amended third-party complaint on February 2, 2017, alleging violations of substantive due process and procedural due process, conspiracy to violate Edge's due process rights, an unconstitutional taking, trespass, inverse condemnation under the Fifth Amendment to the U.S. Constitution, and action to quiet title. Removed Case Dkt., ECF No. 23; Sup. Ct. Dkt.[1] The District filed an

---

[1] On April 17, 2017, Edge filed a motion in the Superior Court Action to stay its counterclaims pending their resolution in federal court. Sup. Ct. Dkt. On September 1, 2017, that motion was denied. *Id.*

4

answer on October 15, 2017. Sup. Ct. Dkt. D.C. Water also filed a complaint against Pinpoint that was consolidated with the Superior Court Action. *Id.*

On November 17, 2017, Superior Court Judge John Mott issued an order on D.C. Water's motion to dismiss Edge's amended counterclaims. *Id.* Judge Mott dismissed Edge's claim for negligence under the UFPA, but denied the motion as to the other six claims. *Id.* On January 12, 2018, Judge Laura Cordero, to whom the case had been reassigned, issued a revised Scheduling Order that set deadlines for expert reports (May 4 and July 6, 2018), the close of discovery (September 14, 2018), deciding dispositive motions (November 9, 2018), and the conclusion of mediation (November 20, 2018). *Id.*

### 2. The Instant Case

On April 6, 2017, Edge filed this complaint against the District of Columbia, D.C. Water, Celtic, and a number of individuals employed by D.C. Water and DCRA. *See* Compl. ¶¶ 4-14. The complaint alleges 13 causes of action against one or more of the Defendants: violation of substantive due process and procedural due process; conspiracy to violate due process rights; an unconstitutional taking; inverse condemnation; two counts alleging violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act; a request for a declaratory judgment; negligent supervision; negligence under the UFPA; trespass; action to quiet title; and a request for injunctive relief. *Id.* ¶¶ 251-370. Edge had already brought most, but not all, of these causes of action in the Superior Court Action; its new causes of action include the two RICO claims. Edge's complaint in this case also adds Celtic and a number of D.C. Water and DCRA employees in their personal capacities as defendants.

Presently before the Court are motions to stay the case pursuant to the *Colorado River* abstention doctrine or, alternatively, to dismiss the case, filed by D.C. Water, ECF No. 23, and Defendant George S. Hawkins, ECF No. 28.[2]

## II. Legal Standard

Even if other abstention doctrines do not apply, "a district court may nonetheless exercise its discretion and decline to hear a case that is otherwise properly before it based on the principles the Supreme Court set forth in *Colorado River*." *Atkinson v. Grindstone Capital, LLC*, 12 F. Supp. 3d 156, 161 (D.D.C. 2014). "In *Colorado River*, the Supreme Court explained that where there are two courts with concurrent jurisdiction over the same matter, the decision to abstain from an exercise of jurisdiction may sometimes rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* (alteration in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).[3]

---

[2] In considering these motions, the Court evaluated Edge's Complaint, Compl.; D.C. Water's Motion to Stay or Dismiss, ECF No. 23 ("D.C. Water Stay Mot."); George S. Hawkins' Motion to Stay or Dismiss, ECF No. 28; Plaintiff's Corrected Combined Opposition to the Motion to Stay/Dismiss Filed by D.C. Water and George Hawkins, and to the Motion to Dismiss Filed by the District Defendants, ECF No. 38 ("Edge Opp."), D.C. Water's Reply, ECF No. 40; and Hawkins' Reply, ECF No. 41. Celtic and the District of Columbia also have motions to dismiss for failure to state a claim pending. *See* ECF Nos. 21, 24.

[3] Edge's complaint seeks damages, injunctive relief, and declaratory relief. Compl. ¶¶ 251-370. While *Colorado River* controls when plaintiffs seek damages or injunctive relief, some courts have applied a different test if plaintiffs seek declaratory relief: "a district court has broad discretion to stay the federal action as long as the necessary parties have been joined in the state court proceeding and the claims of all parties in interest can satisfactorily be adjudicated by that tribunal." *Mass. Biologic Labs. of the Univ. of Massachusetts v. MedImmune, LLC*, 871 F. Supp. 2d 29, 33 (D. Mass. 2012) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 281-90 (1995)). The circuits are split, and the D.C. Circuit has not spoken, on which test—*Colorado River* or *Brillhart/Wilton*—governs when plaintiffs seek both forms of relief, as here. *Id.* at 33-35 (reviewing the split). The Court need not wade into this morass because it concludes that abstention is appropriate under the more stringent *Colorado River* test.

6

In most circuits, "[i]n order to decide whether the *Colorado River* doctrine applies to a particular case, [a court] must first determine whether the concurrent state and federal lawsuits are parallel." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005); *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 & n.21 (collecting cases). The D.C. Circuit "has yet to address" whether this threshold inquiry is required in this Circuit and, if so, the standard for it. *Saddler v. AMEC Foster Wheeler Env't & Infrastructure, Inc.*, 253 F. Supp. 3d 210, 219 (D.D.C. 2017). Nevertheless, the Court will assume that this requirement applies. If actions are deemed parallel, then a district should consider the following factors "when deciding whether it will abstain in favor of letting the case proceed in the other forum: [1] which court first obtained jurisdiction over the property in dispute, if any; [2] any inconvenience that might result from litigating in a federal forum; [3] which court first obtained jurisdiction over the case; [4] the desirability of avoiding piecemeal litigation; [5] whether federal or state law controls; and [6] whether the state law forum will adequately protect the interests of the parties." *Atkinson*, 12 F. Supp. 3d at 161.

"In the district court's analysis, '[n]o one factor is necessarily determinative; [but] a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required.'" *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 353 (D.C. Cir. 2003) (alterations in original) (quoting *Colo. River*, 424 U.S. at 818-19). "[O]nly truly 'exceptional circumstances' will allow a federal court to stay or dismiss a federal action in favor of a concurrent action before a state court." *Id.* (quoting *Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1518 (D.C. Cir. 1989)). Indeed, the balance is "heavily weighted in favor of the exercise of jurisdiction" because "the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Moses H.*

7

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983) (quoting *Colo. River*, 424 U.S. at 817).

The Court will first address the threshold question of whether these proceedings are "parallel," and then evaluate each of the *Colorado River* factors.

### A. Parallel Proceedings

While the D.C. Circuit has not addressed how similar two cases must be to support abstention under *Colorado River*, several other circuits have answered this question by requiring that the "federal and state proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330 & n.21 (collecting cases). "This does not mean that the suits must be 'identical,' or that 'the mere presence of additional parties or issues in one of the cases will . . . necessarily preclude' application of *Colorado River* abstention." *Saddler*, 253 F. Supp. 3d at 219 (quoting *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001)).

Here, although Edge adds some new claims and parties to its federal court complaint, the Court concludes that the cases are "substantially the same" for the purposes of *Colorado River* abstention.

#### 1. Substantially Similar Issues

The vast majority of the claims that Edge asserts in federal court were also asserted in the Superior Court Action. *Compare* Compl., *with* Removed Case Dkt., ECF Nos. 22, 23. But its federal complaint adds two RICO claims, a negligent supervision claim, and a request for a declaratory judgment that various state laws and federal constitutional rights were violated. Compl. ¶¶ 293-328, 335-342. It also asserts an action to quiet title against D.C. Water and the District, even though it only asserted that claim against the District in the Superior Court Action. *See id.* ¶¶ 361-365; Removed Case Dkt., ECF Nos. 22, 23.

Despite these new claims, the Court concludes that the issues the two cases present are substantially similar. Both cases arise from the same core set of facts—D.C. Water's and DCRA's actions leading up to the razing of Edge's Building. And both the Superior Court Action and this case share the same central questions, including what process Edge received before the Building was razed, whether there was an agreement between DCRA and D.C. Water to harm Edge, and whether DCRA had the authority to raze the Building. Compl. ¶¶ 251-285, 329-334. Although the claims in the federal case are not identical to those in the Superior Court Action, the Court nevertheless concludes that the cases raise similar issues, and therefore are parallel, because they "will be resolved largely by reference to the same evidence." *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752-53 (7th Cir. 2006); *see also Freed v. Friedman*, 215 F. Supp. 3d 642, 649 (N.D. Ill. 2016) (finding actions parallel where the claims differed but "the underlying factual disputes overlap considerably").

Edge's new RICO claims do not render the cases dissimilar for the purposes of *Colorado River* abstention because "the RICO claim is based on many of the same facts at issue in the state action." *Foxfield Villa Assocs., LLC v. Regnier*, 918 F. Supp. 2d 1192, 1198 (D. Kan. 2013); *see also Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 180 F. Supp. 2d 1235, 1240 (D. Kan. 2001) (finding cases parallel where the federal case "includes a RICO claim against [defendant], but that claim arises from many of the same facts as the claims asserted in the [state] case").

It is also worth noting that Edge could have brought its RICO, negligent supervision, and declaratory judgment claims in the Superior Court Action, but chose not to do so. *See Tafflin v. Levitt*, 493 U.S. 455, 460 (1990) (federal and state courts have concurrent jurisdiction over civil RICO claims); *McIntosh v. Washington*, 395 A.2d 744, 749 (D.C. 1978) ("The Superior Court has authority to award declaratory judgments in cases within the jurisdiction of that court.").

Many courts have held that parties cannot create non-parallel actions for purposes of a *Colorado River* analysis by choosing not to bring counterclaims in state court and saving them for their federal action. *See, e.g.*, *Compass Bank v. Eager Rd. Assocs., LLC*, No. 4:10-cv-413, 2011 WL 3794257, at *3 (E.D. Mo. Aug. 25, 2011) ("[T]he Court agrees with Defendants that Compass' failure to allege a compulsory counter-claim in the State Action does not preclude application of the *Colorado River* abstention doctrine here."); *CFI of Wis., Inc. v. Wilfran Agric. Indus., Inc.*, No. 2:99-cv-1322, 1999 WL 994021, at *2 (E.D. Pa. Nov. 2, 1999) ("Courts have held that two actions are parallel even though a party must amend its pleadings in the state court to raise all claims.") (collecting cases); *Allied Nut & Bolt, Inc. v. NSS Indus., Inc.*, 920 F. Supp. 626, 630 (E.D. Pa. 1996) ("[W]hen a defendant in a state-court action fails to assert . . . a counterclaim based upon the same transaction or occurrence as the claim against them[], and instead brings that claim in federal court, the two cases are generally not meaningfully different.") (collecting cases).

### 2. Substantially Similar Parties

The parties to the actions are also similar. Specifically, Edge, D.C. Water, and the District are the central parties to Edge's claims in both of the actions. In its federal complaint, however, Edge adds Celtic and a number of D.C. Water and DCRA employees, sued in their individual capacities, as defendants.

The Court finds that these differences, too, are insufficient to defeat parallelism. Merely adding government employees, even if sued in their individual capacities, to a lawsuit against a city is not enough to avoid application of *Colorado River*. *See Tyrer*, 456 F.3d at 752 n.9 ("Significantly, the City of South Beloit is a defendant in both the state and the federal action; that [plaintiff] also named the City Council members as defendants [in their individuals capacities] in his state suit does not undermine the conclusion that [plaintiff's] federal suit raises

10

the same claims against the City that are being litigated currently in his state action."); *Foxfield*, 918 F. Supp. 2d at 1197 ("Plaintiffs cannot avoid application of the *Colorado River* doctrine simply by adding additional parties in the federal suit—especially when the additional parties are so closely affiliated with the defendant present in both cases.").

Moreover, that Edge chose not to file a third-party complaint against Celtic, despite having the ability to do so, should not be a basis to find the cases are not parallel. *See Knight v. DJK Real Estate Grp., LLC*, No. 1:15-cv-5960, 2016 WL 427614, at *5 (N.D. Ill. Feb. 4, 2016) (finding parallelism where differences between parties were due to "unilateral choice" of plaintiff). Indeed, "[i]f the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional parties." *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (quoting *Lumen Constr., Inc. v. Brant Constr. Co. Inc.*, 780 F.2d 691, 695 (7th Cir. 1985)).

### B. The *Colorado River* Factors

Having concluded that the Superior Court Action and this case are parallel, the Court turns to the *Colorado River* factors. While the Court recognizes that it has a "virtually unflagging obligation" to exercise its jurisdiction, *Colo. River*, 424 U.S. at 817, it concludes that this case presents "exceptional circumstances" justifying a stay. *See Handy*, 325 F.3d at 351.

#### 1. Which Court First Obtained Jurisdiction over the Property in Dispute

The parties agree that this factor is irrelevant because the case does not involve *in rem* jurisdiction over property. D.C. Water Stay Mot. at 9; Edge Opp. at 26.[4]

---

[4] Some circuits have held that factors that are "irrelevant" or "neutral" should weigh in favor of the federal court exercising jurisdiction, while others have not. *Compare Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) ("[T]he facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it."), *with Rajaratnam v. Bd. of Trs. of Leland Stanford Junior Univ.*, No. 16-cv-07413, 2017 WL 2840716, at *3 (N.D. Cal. July 3,

### 2. Any Inconvenience That Might Result from Litigating in a Federal Forum

The parties also agree that this factor is neutral because the Superior Court and this Court are located across the street from one another. D.C. Water Stay Mot. at 9; Edge Opp. at 26; *see Saddler*, 253 F. Supp. 3d at 220 (explaining this factor "does not support abstention" because "the physical distance between this Court and the D.C. Superior Court is closer to 300 feet than 300 miles") (emphasis omitted).

### 3. Which Court First Obtained Jurisdiction over the Case

This factor weighs heavily in favor of abstention. The Superior Court Action was filed first. D.C. Water filed it on January 1, 2016, and Edge filed its counterclaims on October 24, 2016. Sup. Ct. Dkt. The instant action was not filed until April 6, 2017, thirteen months after the Superior Court Action and about six months after Edge filed its counterclaims in that case. The Court acknowledges that once the Superior Court Action was remanded back to Superior Court, Edge filed this action soon afterward. Nonetheless, the fact remains that the Superior Court Action was filed first.

More importantly, the Supreme Court has instructed that this factor "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," and "priority should

---

2017) (noting "courts in the Ninth Circuit have treated neutral factors as irrelevant" to question of whether to retain jurisdiction) (collecting cases). The D.C. Circuit has not spoken on the issue. Consistent with other district courts in this Circuit, the Court does not treat factors that are neutral or irrelevant as weighing in favor of exercising jurisdiction. *See, e.g.*, *Atkinson*, 12 F. Supp. 3d at 162 ("[T]he parties agree that their dispute does not concern property, and as a result, that the first factor is irrelevant to the Court's abstention decision."); *1443 Chapin St., LP v. PNC Bank, Nat'l Ass'n*, 718 F. Supp. 2d 78, 83 n.2 (D.D.C. 2010) ("As this case does not involve *in rem* jurisdiction, this factor is irrelevant to the Court's inquiry."); *Foster-el v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) ("[T]his first factor does not weigh in favor of or against abstention."). And even if these neutral or irrelevant factors must be deemed to tip slightly in favor of exercising jurisdiction by default, the Court concludes that they are outweighed by factors three through five, which, taken together, provide a strong case for abstention.

not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Here, not only was the Superior Court Action filed first, it is significantly ahead of this case. On November 17, 2017, Judge Mott issued a decision on D.C. Water's motion to dismiss Edge's amended counterclaims, denying it as to six of the seven counterclaims. Sup. Ct. Dkt. And on January 12, 2018, Judge Cordero issued a revised Scheduling Order that established deadlines over the next year for expert disclosure, the end of discovery, dispositive motions, and mediation. *Id.* Expert reports, to take one example, are due in little over a month from now. *Id.* Thus, the Superior Court Action is well ahead of this case, which is still at the motion to dismiss stage. As such, this factor weighs strongly in favor of abstention.

### 4. The Desirability of Avoiding Piecemeal Litigation

Courts have explained that "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Saddler*, 253 F. Supp. 3d at 221 (quoting *Foster-el*, 163 F. Supp. 2d at 71); *see also Hurley v. Heilig*, 28 F. Supp. 2d 33, 35 (D.D.C. 1998) ("Having the parties litigate identical questions of law applied to identical facts in two separate forums could result in contradictory or, at a minimum, irreconcilable rulings."). Other courts have noted that, "for this factor to weigh in favor of abstention, something more than duplicative litigation must exist." *Atkinson*, 12 F. Supp. 3d at 164 (collecting cases). Indeed, "[t]here must be an actual risk of piecemeal litigation if the matter proceeds in two locations, such as when the parallel actions involve different parties or claims," not just cases that "are 'mirrors' of one another." *Id.* (quoting *Johnston Lemon & Co. v. Smith*, 882 F. Supp. 4, 5 (D.D.C. 1995)); *see also Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 599-600 (S.D.N.Y. 2013) ("'[T]he mere potential for conflicting outcome[s] between the two actions does not justify abstention under the piecemeal litigation

13

factor.' . . . Abstention is 'more appropriate' when the parties to the state and federal actions are 'not identical' as there is a 'possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits.'" (quoting *Shields v. Murdoch*, 891 F. Supp. 2d 567, 582-83 (S.D.N.Y. 2012))).

Here, the Court concludes that permitting the Superior Court Action and this case to proceed in tandem will result in piecemeal litigation, and thus this factor strongly favors abstention. All of the counterclaims that Edge asserted in the Superior Court Action were also asserted as claims in this case. *Compare* Compl., *with* Removed Case Dkt., ECF No. 22. Given that Judge Mott has already ruled on a motion to dismiss Edge's counterclaims, deciding D.C. Water's motion to dismiss in this Court would involve "different tribunals consider[ing] the same issue, thereby duplicating efforts and possibly reaching different results." *Saddler*, 253 F. Supp. 3d at 221 (quoting *Foster-el*, 163 F. Supp. 2d at 71). Moreover, that Edge added RICO claims to its federal case also does not lessen the risk of duplication between proceedings. *See Foxfield*, 918 F. Supp. 2d at 1199 ("Granted, plaintiffs have added new defendants and a RICO claim to this litigation; nonetheless, the issues and factual circumstances in both cases are nearly identical. Duplication of proceedings would waste the resources of both the parties and the court.").

In fact, Edge's decision to add some new claims (RICO, declaratory judgment, negligent supervision) and defendants (Celtic, individual D.C. Water and DCRA employees) to this case *increases* the risk of piecemeal litigation because the Superior Court Action and this case are not just "mirrors" of one another. As a result, there is a significant risk of piecemeal litigation because the cases "pose[] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." *First Keystone Consultants, Inc. v. Schlesinger Elec.*

14

*Contractors, Inc.*, 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012) (citing *Woodford*, 239 F.3d at 524). For example, the Superior Court's conclusion as to whether Edge can maintain a quiet title claim against the District of Columbia may not have preclusive effect on its quiet title claim against D.C. Water in this Court. Similarly, the Superior Court's holding as to whether Edge stated a counterclaim for trespass against D.C. Water and the District of Columbia may not resolve that same claim against Celtic, who is not a party to the Superior Court Action, in this case. Ultimately, the desirability of avoiding piecemeal litigation weighs strongly in favor of abstention.

### 5. Whether Federal Law or State Law Controls

The Supreme Court has explained that "[a]lthough in some rare circumstances the presence of state-law issues may weigh in favor of . . . surrender, the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26 (citation omitted). "Such a rarity may arise where the state-law issues 'present particularly novel, unusual or difficult questions of legal interpretation' that are best left to state court resolution." *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 118 (1st Cir. 2012) (quoting *Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995)). This source-of-law factor has "less significance" when "the federal courts' jurisdiction . . . is concurrent with that of the state courts." *Moses H. Cone*, 460 U.S. at 25.

Here, Edge's federal complaint asserts a mix of federal and state law claims, including RICO claims that are only asserted in its federal action. Compl. ¶¶ 251-370. Although Edge's federal claims would normally be "a major consideration weighing against surrender," *Moses H. Cone*, 460 U.S. at 26, the Court concludes that this factor favors abstention for two reasons.

*First*, the Superior Court has concurrent jurisdiction over all of Edge's federal claims, which are brought under the U.S. Constitution and RICO. *See Bates v. Van Buren Twp.*, 122 F.

15

App'x 803, 807 (6th Cir. 2004) ("[S]tate and federal courts have concurrent jurisdiction over federal constitutional issues."); *Tafflin*, 493 U.S. at 460 (concurrent jurisdiction over civil RICO claims). As such, this reduces the importance of Edge's federal law claims in the abstention analysis. Indeed, courts have been willing to abstain under *Colorado River* in cases involving RICO and federal constitutional claims. *See, e.g.*, *Mahbod v. N.Y. Life Ins. Co.,* No. 05-cv-3266, 2006 WL 2513423, at *4 (E.D. La. Aug. 25, 2006) ("[W]hile the presence of RICO claims is an important factor, its significance is seriously diminished in light of the circumstances." (internal quotation marks omitted)); *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 815 F. Supp. 127, 132 (S.D.N.Y. 1993) (finding presence of RICO claims "has little significance" because plaintiff can pursue them in state court); *Canaday v. Koch*, 608 F. Supp. 1460, 1474 (S.D.N.Y. 1985) ("In an appropriate case, even the presence of a federal constitutional issue does not prevent *Colorado River* abstention. . . . In this case, it is plain that the primary battleground is state law, and unsettled state law at that. Clarification of that state law may well obviate the need for decision of a constitutional issue."), *aff'd sub nom. Cannady v. Valentin*, 768 F.2d 501 (2d Cir. 1985). That is particularly true when, as here, Edge brought its federal constitutional claims as counterclaims in state court first. *Cf. Tyrer*, 456 F.3d at 757 (federal claims do not weigh in favor of abstention where plaintiff "chose to bring his federal claims first in a state forum").

*Second*, this is a "rare" case involving highly unusual state-law issues. *Elmendorf Grafica*, 48 F.3d at 52. Edge's complaint and the parties' motion-to-dismiss briefing raise a number of "novel, unusual, or difficult" questions of state law. *Id.* These include, for instance, whether D.C. Code § 6-801 and D.C. Code § 42-3131, the two statutes cited in the raze notice of April 22, 2015, provided the requisite authority to raze the Building, Edge Opp. at 36, 37 & n.13; whether the Mayor properly delegated her legal authority to raze the Building to DCRA under

D.C. Code §§ 6-801(a) and 42-3131.01(c), Compl. ¶¶ 156-160, 192, 331; whether D.C. Code § 6-801(a) required DCRA to conduct an examination of either the Building or the NEBTS before razing the Building, Compl. ¶ 334(b); whether Edge is a member of the protected class envisioned by the UFPA, D.C. Water Stay Mot. at 23-24 (an issue Judge Mott has already decided in his November 17, 2017 Order, Sup. Ct. Dkt.); and whether the "public duty" doctrine bars Edge's negligent supervision claim against the District, ECF No. 24 at 35-36. These are hardly "garden-variety" state-law issues. *Saddler*, 253 F. Supp. 3d at 220. Indeed, the Court was unable to locate any published opinions addressing the legal issues flowing from the factual scenario at issue here: a decision by the District of Columbia to raze a brand new building shortly after approving its construction.

There are also state law issues embedded in many of Edge's federal claims, such as whether D.C. Water's status under District of Columbia law as an independent authority shields it from a federal constitutional takings claim, Edge Opp. at 47; whether Edge received proper notice under D.C. Code § 6-903 when the condemnation order was recorded, Edge Opp. 35 at n.11; and whether Edge has properly pleaded common law fraud, one of the predicate acts alleged in the RICO claims, Compl. ¶¶ 301, 304. These too point in favor of abstention. *See, e.g.*, *Godfrey v. Branstad*, 56 F. Supp. 3d 976, 985-86 (S.D. Iowa 2014) (finding source-of-law factor weighs "heavily" in favor of abstention because despite "federal constitutional claims . . . [that] will be analyzed under the federal constitutional framework," plaintiff's due process claims require interpreting state statutes "to determine whether [plaintiff] has a protected property interest"). Thus, "[b]ecause this matter involves difficult—and perhaps novel—questions of local law and policy, the source-of-law factor favors abstention." *Foster-el*, 163 F. Supp. 2d at 73; *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205,

211 (2d Cir. 1985) (abstaining under *Colorado River* in case involving "the construction of state and municipal building, safety, and fire codes").

### 6. Whether the State Law Forum Will Adequately Protect the Interests of the Parties

"The final *Colorado River* factor asks whether the state forum will adequately protect the interests of the parties." *Atkinson*, 12 F. Supp. 3d at 166; *see also Moses H. Cone*, 460 U.S. at 28 (factors asks whether "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties"). "In other words, it questions whether abstention will cause prejudice to a party's rights." *Atkinson*, 12 F. Supp. 3d at 166.

Edge argues that abstention will prejudice it for three reasons. It argues that it is entitled to a federal forum, Edge Opp. at 31 (citing *Hoai*, 866 F.2d at 1520-21), that this Court has more experience handling Edge's federal claims, and that federal courts have enhanced subpoena power that can reach third parties "outside the geographic reach" of a Superior Court subpoena, *id.* at 31-32.

The Court finds these arguments unpersuasive. As to the first argument, the Superior Court has concurrent jurisdiction over all of Edge's federal claims. *Bates*, 122 F. App'x at 807; *Tafflin*, 493 U.S. at 460. And many of the federal constitutional claims turn on state-law issues. Moreover, "[s]tate courts, as much as federal courts, have a solemn obligation to follow federal law." *Lumen*, 780 F.2d at 697 (quoting *Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 571 (1983)); *see also Ericksen v. Vill. of Willow Springs*, 876 F. Supp. 951, 959 (N.D. Ill. 1995) (finding existence of concurrent jurisdiction over a Section 1983 claim "weighs strongly in favor of abstention" because "[s]tate court action would have been adequate to protect [plaintiff's] federal rights").

As to the second argument, as explained above, this dispute largely turns on novel state law questions that can be adequately addressed by the Superior Court. And most of Edge's federal claims are constitutional claims (such as due process, substantive due process, and takings) that the Superior Court has concurrent jurisdiction over and frequently adjudicates.

Edge's last argument is that it needs this Court's "enhanced subpoena power" to reach "foreign" companies that D.C. Water paid to repair and inspect the NEBTS. Edge Opp. at 31. But Edge does not specify why the Superior Court process is inadequate, or provide any concrete examples of entities that it cannot subpoena in the Superior Court Action. And because the Court is only staying, not dismissing, the case, Edge retains the right to return to federal court if necessary. *See Mahaffey v. Bechtel Assocs. Prof'l Corp., D.C.*, 699 F.2d 545, 546-47 (D.C. Cir. 1983) ("[C]onsiderations of judicial economy are appropriately served by staying one of the actions while the other progresses."); *Fox v. Maulding*, 16 F.3d 1079, 1083 (10th Cir. 1994) ("We think the better practice is to stay the federal action pending the outcome of the state proceedings."); *Commercial Cas. Ins. Co. v. Swarts, Manning & Assocs., Inc.*, 616 F. Supp. 2d 1027, 1037 (D. Nev. 2007) ("[T]he choice of a stay rather than a dismissal will have no practical effect if all the parties' issues are resolved by the state proceeding. But if those issues are not resolved, a stay ensures that the federal court will meet its unflagging duty to exercise its jurisdiction in case the state proceedings do not reach the expected resolution." (internal quotation marks omitted)).

The Court also concludes that abstaining would not prejudice the Defendants. D.C. Water has moved for a stay, and thus cannot argue that it would be prejudiced by abstention. The District of Columbia did not oppose either D.C. Water's request for a stay or its previous motion to remand the Superior Court Action, suggesting that it does not feel that it will be

19

prejudiced by litigating in Superior Court. And Celtic and the individual defendants, who are not parties to the Superior Court Action, have not seen fit to explain why letting the Superior Court Action proceed while this case is stayed will harm their interests.

Ultimately, the Court concludes that this factor is neutral because litigating this dispute through the Superior Court Action will not prejudice the parties.

*      *      *

In sum, the Court concludes that factor one is irrelevant, factors two and six are neutral, and factors three through five favor abstention. Thus, the Court concludes that this constitutes an "exceptional circumstance" where abstention is warranted.

### III.  Conclusion and Order

For all of the above reasons, Defendants D.C. Water's, ECF No. 23, and George S. Hawkins', ECF No. 28, Motions to Stay or Dismiss are **GRANTED IN PART**. The Court will **STAY** this matter, pending further order of the Court, pursuant to the *Colorado River* abstention doctrine. Of course, if circumstances materially change, any party to this action may move to lift the stay.

**SO ORDERED.**

/s/ Timothy J. Kelly<br>TIMOTHY J. KELLY<br>United States District Judge

Date: March 30, 2018